Filed 1/29/14  P. v. Seaton CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B246548 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. NA089436 consolidated with No. NA089702) |
| JAMAL SEATON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge.  Affirmed.

Kevin Michele Finkelstein, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Jamal Seaton appeals his conviction by jury verdict of one count of felony vandalism. His appointed counsel found no arguable issues for appeal. We find no arguable issues and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Appellant was charged with seven offenses arising from incidents occurring at two separate locations on the same day, one on West 19th Street in San Pedro and the other on Magnolia Street. One charge (count 3) was dismissed on the prosecution's motion in the interests of justice. Of the remaining counts, appellant was found not guilty by the jury of all charges except count 6, felony vandalism at the residence at West 19th Street. That charge arose out of an altercation with his former girlfriend, Kameron C. We therefore confine our review and discussion to the single count on which appellant was convicted and sentenced.

Kameron C. testified that she began dating appellant in 2004 and continued to see him off and on until sometime in 2010. He is the father of her five-year-old twin daughters. She and appellant did not stay in contact after ending the relationship and Kameron did not consider him to be a friend.

On July 5, 2011, Kameron, the twins, and her dog lived on West 19th Street. Appellant was not allowed to come to her home or to visit the children without permission. At 2:20 in the morning, Kameron was sleeping in the bedroom with her daughters. She was woken by the noise of the front gate to the house opening. Then she heard a noise at the window. She looked and saw appellant at the window. At first he was yelling, but she could not make out what he was saying through the closed window.

When she saw appellant, Kameron started to dial 911 on her cordless telephone because she had a restraining order against him. Appellant slid the unlocked window open and reached inside. Kameron threw the telephone. The dog was on the bed right under the window. Appellant grabbed the dog and tried to pull it through the window. Kameron held onto the dog and a struggle followed. Appellant banged Kameron's arms against the windowsill and hit her, but was unable to get possession of the dog.

2

Appellant then went to the front door and kicked it in. Kameron entered the living room and saw appellant lift her laptop and smash it on the floor, then smash the printer on the floor as well. Kameron used her cell phone to call 911. Appellant hit her. He left with the dog. Kameron estimated the value of the laptop at $600 and the printer at $100. She identified photographs of her damaged laptop and printer.

An information was filed and amended charging appellant with vandalism causing over $400 in damage arising from the damage to Kameron's computer equipment. (§ 594, subd. (a).) During pretrial proceedings, defense counsel declared a doubt as to defendant's competence to stand trial. Criminal proceedings were suspended and an examination of appellant was ordered. Dr. Kaushal K. Sharma conducted a psychiatric examination of appellant under Evidence Code section 730 in order to determine whether he was competent to stand trial in relation to the charges arising from the incident at the house on Magnolia Street. Dr. Sharma concluded that appellant did not demonstrate any psychotic symptoms. He demonstrated understanding of his legal predicament, the possible consequences, the role of various court officials, and the circumstances under which he was taken into custody, although he minimized his criminal behavior. Dr. Sharma concluded that appellant was competent to stand trial. The report indicated that the court might wish to issue a medical minute order asking the jail psychiatrist to evaluate appellant for possible medication. Appellant had stated during the interview that he needed medication.

Dr. Sanjay M. Sahgal conducted a psychiatric evaluation of appellant in December 2012 regarding the same incident. He observed that appellant had a severe problem with methamphetamine dependence and in the past had experienced psychotic symptoms during and after chronic abuse of that drug. Dr. Sahgal concluded that appellant was capable of forming an intent to commit the charged crimes at the time of commission. Appellant described a prior history of psychiatric treatment through outpatient clinics for depression and mood instability. Appellant denied prior psychiatric hospitalization. The court considered the two psychiatric reports and found appellant mentally competent to stand trial.

In February 2012, case No. NA089436 (the Magnolia Street incident) was consolidated with case No. NA089702 (regarding Kameron C.) and the information was amended to add those counts. It was alleged that appellant suffered prior strike convictions under the Three Strikes law in 1999 for burglary in violation of Penal Code section 459[1] (case No. VA054495, a guilty plea) and in 2006 for second degree robbery in violation of section 211 (a no contest plea) (case No. NA067897). It also was alleged that appellant suffered a prior conviction for residential burglary in 1999, a violation of Health and Safety Code section 11352, subdivision (a) in 2000, and a robbery conviction in 2006 under sections 667.5, subdivision (b) and 1203, subdivision (e)(4). Appellant pled not guilty to the consolidated amended information.

Jury trial began on August 21, 2012. The court granted appellant's motion to bifurcate trial of the priors. Defense counsel requested an in camera hearing as to whether certain defense evidence had to be disclosed to the prosecution. The trial court ruled that the information, relevant to count 5 (corporal injury), had to be disclosed. The discovery was given to the prosecutor. The trial court ruled that if appellant testified, he could be impeached with prior convictions for residential burglary and robbery, finding the convictions were not unduly prejudicial and their probative value was not substantially outweighed by the danger of undue prejudice or confusion.

During cross-examination of Kameron, defense counsel showed her a document Kameron wrote after the July 2011 incident. Counsel asked Kameron if she wrote the statement "'I have to live with this fake tooth for the rest of my life. He deserves a third strike to sit in jail for the rest of his life.'" The prosecutor objected. At sidebar, the court admonished defense counsel that normally the jury was not told a case was a third strike case. It stated that if the issue arose, it needed to be addressed outside the presence of the jury. The fact that the witness made the statement did not make it admissible. The court expressed concern that the third strike language was a red flag to jurors. Defense counsel argued that she wanted the statement admitted because it showed Kameron had a motive

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

4

to "put him away." The court commented that this could have been accomplished by saying "he deserves life in prison" and that the court's issue was with the term "'three strike.'"

Defense counsel inquired whether the court planned to ask the jury to disregard it. The court said: "I don't want to emphasize it now and tell the jurors, 'disregard what you just heard,' and they will think, 'Oh, boy, that's really important. Now I have to disregard it.'" The prosecutor said he believed the entire point of bifurcating priors is so the jury does not find out the defendant is facing a third strike charge. The court agreed, and suggested there was no point in bifurcating any longer. Defense counsel suggested that if admonishing the jury would be curative, she would agree, subject to the agreement of her client. The trial court said: "I was just venting. There is no cure here. We just move on." The prosecutor asked the court to admonish defense counsel to avoid any further mention of three strikes or life in prison. Defense counsel argued the importance of Kameron's motive to frame appellant. The court advised defense counsel that she could argue that Kameron had a motive because she wanted appellant to be punished severely, but that no mention was to be made of "'three strike.'"

The court and counsel then discussed how the written statement could be redacted. It was agreed that the phrase "jail for the rest of his life" could be substituted for the redacted "third strike" in the statement written by Kameron. Without repeating the actual words, the court struck the question and answer in which Kameron said she had written that appellant deserved a third strike. The jury was admonished not to consider it. Defense counsel then asked: "Did you write in this document that I showed you in defense [exhibit] A that, 'I have to live with this fake tooth for the rest of my life. He deserves to sit in jail for the rest of his life'?" Kameron said she had. The defense also was allowed to question Kameron as to whether she lied about the incident with appellant in order to cover up a sham marriage to another man.

After the People rested, the defense moved to dismiss counts 1 through 7 pursuant to section 1118.1. The trial court dismissed count 3, but denied the motion as to the remaining counts. The jury was informed that count 3 had been dismissed.

The defense presented witnesses who testified that Kameron repeatedly telephoned them before July 2011 to find out where appellant was and that she was upset by his relationship with another woman.

Appellant testified in his own defense. He said that he had a relationship with Kameron until he was arrested in 2011. He stayed with her several days a week. She was upset about his relationship with Robin Underwood, who became pregnant in 2009. Kameron had told him she entered into a sham marriage with a man named Zouhair Mouchtachar for several thousand dollars.

According to appellant, Kameron asked him to come over on July 4, 2011 to help her because she was still healing from recent surgery. After she and the children went to bed, he went to sleep on the couch in the living room. Later that night he heard a noise, and saw the door opening. He got into a tussle with the man who had entered the residence. When Kameron turned on the lights appellant saw that it was the man Kameron had married. Kameron screamed and grabbed appellant to get him off of the man. The man reached into his pants. Appellant grabbed the first thing available, the computer, and tried to throw it at the man's head. Appellant left the residence and the dog followed him.

During deliberations, the jury requested the readback of the testimony of Emanuel Kirton and Daniel Brown and asked to review the police report by Long Beach Police Officer Juarez, who investigated the Magnolia incident. The court responded that the police report was not in evidence and therefore could not be given to the jury. The testimony of witnesses Kirton and Brown was read back. Later the same day, the jury asked: "Were the photos of Kameron C. and her home (People's exhibit 3, 4, 5, 7, 8, 9, etc.) taken by the police, on the night of the incident?" The jury also submitted the following to the court the same day: "Are the photos provided of Kameron C.'s home & person photos that were taken by the police? That is, are they police photos or photos that were taken by someone else?" The court responded: "Besides the readback, there is no further testimony regarding when any pictures were taken, or by whom."

6

The jury found appellant guilty of vandalism (count 6) but not guilty on all other charges. Appellant was advised of his right to trial on the prior conviction allegations and waived it. He admitted the prior allegations. Prior to sentencing, appellant moved to dismiss his prior convictions under section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. He cited the nature of the current offense, and argued that even without the strike allegations, appellant would receive a lengthy sentence. In addition he cited factors relied upon by the court in *People v. Garcia* (1999) 20 Cal.4th 490, 503, including the fact that one of his prior prison terms arose from a single period of aberrant behavior, he had cooperated with police, his crimes were related to drug addiction, and he did not have a violent criminal history.

At sentencing, probation was denied. The trial court struck the residential burglary strike but denied the motion as to the other strike conviction. It imposed the upper term of six years on count 6, plus one year for the prior convictions pursuant to section 667.5(b) for a total term of nine years in prison. Appellant was given total credit time for 771 days in custody (514 days actual and 257 days good time/work time). He was ordered to pay a $240 restitution fine (§ 1202.4), a parole restitution fine (§ 1202.45), a $40 court security fee (§ 1465.8) and a $30 court facilities assessment (Gov. Code, § 70373). He filed a timely appeal.

## DISCUSSION

We appointed counsel to represent appellant on appeal. Appointed counsel filed an appellate brief raising no issues, but asking that we independently review the record on appeal pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441–442. We advised appellant that he had 30 days within which to submit by brief or letter any contentions or argument he wished this court to consider. We have received no response to this letter. We have independently reviewed the entire record on appeal and find no arguable issues that could aid appellant.

7

## DISPOSITION

The judgment of conviction is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.